NEWMAN ET AL., APPELLANTS, v. THE PEOPLE EX REL. MCHENRY ET AL., APPELLEES.

1. JUDGMENTS AND EXECUTIONS.
A joint judgment may be entered against a constable and the sureties on his bond in the first instance, but the property of the sureties shall not be levied upon under an execution until the officer serving the writ shall have failed to find sufficient property of the principal to satisfy it.

2. CHATTEL MORTGAGES.
The holder of a chattel mortgage given to secure a series of notes maturing at different times is not required to take possession of the goods upon default in payment of the first note.

3. SAME.
A mortgage of chattels is a conditional sale thereof. It vests the legal title in the mortgagee, subject to redemption by performance of the condition, but upon condition broken the title becomes absolute in the mortgagee.

4. CONSTABLE.
A constable and the sureties on his bond are liable in damages to the holder of a valid chattel mortgage on property seized by the officer under an execution against the mortgagor.

*Appeal from the District Court of Arapahoe County.*

Messrs. PENCE & PENCE and Mr. JAMES McGINNIS, for appellants.

Mr. GEORGE A. SMITH, for appellees.

THOMSON, J., delivered the opinion of the court.

This is a suit· by the people for the use of McHenry & Graff, against Edward Newman, a constable of Arapahoe county, upon his official bond, and the other defendants as sureties on the bond. The complaint alleges ownership, and right of possession by McHenry & Graff, of certain personal property, a portion of which they claimed under a chattel mortgage executed to them by one Kerwin, who was in default in payment of one of the notes it was given to secure ; ·and a portion, as having the absolute title in themselves. The mortgage was given to secure five promissory notes for $75.00 each, dated June 1, 1890, and due in 30, 60, 90, 120 and 150 days respectively, with interest from date at two per cent per month. The mortgage provided for the retention by the mortgagor of possession of the mortgaged property, and gave the mortgagees the right in case of default in payment of the notes or either of them, or in case of attachment of the property at the suit of other parties before payment of the notes, to take immediate possession of the property for their own use, and sell it, paying the surplus realized, if any, to the mortgagor. The first note was not paid at maturity, and on the 6th day of July, 1890, the plaintiffs proceeded to invest themselves with possession under the mortgage. On the 8th day of July, 1890, the defendant Newman, as constable, seized the goods enumerated in the mortgage, and also the property claimed by plaintiffs· outside of the mortgage, by virtue of a writ of attachment, issued in an action which had been commenced against Kerwin and another. At the time the levy was made, Mr. McHenry was present, claimed the goods as belonging to the plaintiffs, and exhibited the mortgage to Newman ; and afterwards, and be-

fore the goods were removed, served a written notice upon him of their ownership and possession of the goods. Newman nevertheless removed the property, and still retains it; hence this suit.

No question is made as to the liability of the officer upon his official bond for the acts complained of. Before the jury to try the case was impaneled, the defendant moved the court for judgment upon the pleadings, which motion was denied. At the close of the case for plaintiffs, the defendants asked a nonsuit, which was refused. Four instructions, requested by the defendants, were refused, and a motion for a new trial overruled. These several rulings of the court are assigned for error.

It is contended that the defendants were entitled to judgment on the pleadings, for the reason "that no suit could be brought against the sureties upon the bond until after the amount of the principal's liability had been determined." In support of this contention we are cited to *Sterling v. Cock*, 2 Colo. 24; *Sterling v. Hughes*, 3 Colo. 229; Brandt on Suretyship and Guaranty, § 494.

The two Colorado cases were suits upon attachment bonds, in which the specific condition was the payment of such damages as might be awarded against the principal obligor, thus making a determination of his liability necessary before proceeding against the surety. The citation from Brandt refers to cases upon bonds of executors and administrators. An executor or administrator makes settlements, pays debts, and distributes the assets of his estate under the order of the court, and there must of necessity be a judicial ascertainment of his liability before recourse can be had upon his bond. None of these authorities are applicable here, as will be seen by an examination of our statute on the subject. Section 2069 of the General Statutes (1883) provides for the giving of justice's and constable's bonds, and prescribes their conditions. They are conditioned absolutely for the faithful discharge of the duties of the office, so that upon a default in such discharge of duty a liability accrues upon the bond, against

the obligors, principal and surety, jointly. If this does not sufficiently appear from the section itself, then section 2072 makes its meaning clear. The latter section provides that " When judgment shall have been rendered against any justice of the peace or constable, and his securities on his official bond, execution may issue against all of them; but the officer executing the same shall not levy upon the property of the securities until he shall fail to find sufficient property of the justice of the peace or constable to satisfy such execution." This makes it very plain that a joint judgment may go in the first instance against the officer and his sureties, the property of the surety to be undisturbed until that of the principal is exhausted. The motion for judgment upon the pleadings was properly denied.

Next in order comes the motion for a nonsuit. This was based upon the following grounds :

" First. That it appears by the evidence that the plaintiffs on the 6th day of July, 1890, entered into possession of the goods in question under their mortgage and pursuant to the terms thereof, but that they failed to hold exclusive and continued possession of the same, and that John Kerwin, the mortgagor, remained at said place from the time said plaintiffs took possession of the same until the time that the defendant, Newman, made his levy upon said goods. Second. That it appears by the evidence that prior to July 8, 1890, the said plaintiffs had parted with their interest described in the complaint by a sale of the same to one Joe Lowe, and that the said Joe Lowe by his agent, James Marshall, had entered into possession of said goods prior to the time of the levy by the defendant Newman, for which reason the plaintiffs have no interest in this action. Third. For the further reason that it does not appear by the pleadings, nor by the proofs, that prior to the commencement of this action the said plaintiffs commenced an action against the defendant Newman, for the purpose of ascertaining what damages, if any, they had suffered by reason of his act herein complained of; nor does it appear that said Newman had

failed upon demand to pay the said plaintiffs the damages claimed to have been sustained by them by reason of said Newman's act, nor that any demand was made upon said Newman for said damages."

The third ground for the motion has already been disposed of. With reference to the first ground it may be said that the evidence shows that whatever possession the plaintiffs took they kept; and the possession they had when the levy was made was the same possession into which they entered on the 6th day of July, 1890. The evidence upon this question of possession is not very full, but counsel admit the sufficiency of the possession in the first instance; their objection is that plaintiffs failed to hold it. There is no evidence that any possession taken by them was ever relinquished. Kerwin was, during the period of their possession, at the place where the property was, from time to time. What he was doing there does not appear, but it also does not appear that by reason of his presence, or otherwise, any change in the character of the original possession took place, and as the possession is distinctly admitted to have been good, originally, then it was good at the time of the levy.

It was not necessary that possession should have been taken upon default in the payment of the first note, although the mortgage gave the right to do so. Under our chattel mortgage act, Session Laws, 1889, p. 54, plaintiffs could have left the property with the mortgagor until the maturity of the last installment of the indebtedness, so that no right would have been lost if no possession whatever had been taken. A mortgage of chattels is a conditional sale. It vests the legal title to the chattels in the mortgagee, subject to the right of the mortgagor to perform the conditions, and, until default, he has the unquestioned right so to perform, and reinvest himself with the legal title. But, upon condition broken, the legal title becomes absolute in the mortgagee, although an equity remains in the mortgagor which entitled him to any surplus which may be realized from the sale; and, if by the terms of the mortgage, possession continues in the mortgagor until default, the mortgagee may at once take the prop

erty from him. In this case it is not disputed that default was made; and that possession was thereupon taken by the mortgagee is admitted. By the terms of the mortgage, suffering the property to be attached, was also a breach of its conditions; and if there had been no other default, the plaintiffs by virtue of the attachment itself became at once the absolute legal owners of the goods. The defendant constable, while he was making his levy, had full knowledge of the rights of the plaintiffs in the property. This knowledge had been communicated to him by one of the plaintiffs, the mortgage had been exhibited to him, and so far as the property it embraced was concerned he knew that the mortgagor was in default, and that the property therefore belonged to the plaintiffs; and he also knew that the very act in which he was then engaged was in violation of the conditions of the mortgage, and would itself work a forfeiture and vest the title in them, in short, he knew that he was seizing their property to satisfy the debt of another. After he had made his levy, written notice of plaintiffs' claim was served upon him, which he disregarded. By his acts in the premises, he became a trespasser, and a right of action accrued to the plaintiffs against him.

As to the second ground of the motion, the record discloses no facts upon which it could be based. It is not shown by the evidence that prior to July 8, 1890, or at any other time, the plaintiffs had parted with their interest in the goods by a sale to Lowe; or that Lowe by his agent, or otherwise, ever entered into possession of the goods. It appears from the evidence that there had been negotiations between plaintiffs and Lowe for a sale of the property to him; but it does not appear that the sale was ever consummated. The only evidence upon the subject occurs in the testimony of one of the plaintiffs, who says that he sold the property to Lowe " conditionally," and that Lowe made a payment thereon " conditionally." What the conditions were is not stated. But in a conditional sale of property the title remains in the vendor until the performance of some act by the vendee upon which the title shall pass to him. So that even if the goods

had been sold conditionally to Lowe, the title would not necessarily have passed out of the plaintiffs. Their title having been established, it is presumed to have remained in them, and the burden of proof to show that they had parted with it was upon the defendants. It devolved upon them therefore to make proof that such sale of the goods had been made by the plaintiffs to Lowe as would divest them of their title and vest it in Lowe. There is no such proof. It was shown that Marshall was upon the premises, engaged with some others in scrubbing the floor, and that he said that he was there as the agent of Lowe. Lowe had rented the building, which contained the goods, and we see no impropriety in his employment of Marshall to scrub the floor ; but the fact of Marshall's presence, and his statement that he was there as the agent of Lowe, is the only evidence by which it is sought to show possession of the goods in Lowe. We are of the opinion that the granting of the nonsuit on the grounds stated would have been error.

The first and second instructions refused, present the same question which is raised by the first ground of the motion for nonsuit; the motion for judgment upon the pleadings is restated in the third request, and the sale of the property to Lowe is the subject of the fourth. We have already considered at length all the questions which these instructions present, and are of the opinion that they were properly refused.

The only remaining question arises out of the overruling of defendants' motion for a new trial. It is urged by counsel that the jury returned a verdict for too great an amount. The measure of plaintiffs' damages is the value of the goods. As to this value there is considerable evidence, of the weight of which the jury were the sole judges. There is evidence in the record which would have justified the finding of a larger verdict, and this precludes us from any criticism of the verdict as rendered.

The record is without error, and the judgment will be affirmed.

*Affirmed.*